UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MATTIE J. FISCHER, | : | Case No. 1:14-cv-208 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| CINCINNATI OPTIMUM RESIDENTIAL | : | |
| ENVIRONMENT, INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Doc. 8)**

This civil action is before the Court on Defendant's Motion for Summary Judgment (Doc. 8) and Plaintiff's responsive memorandum (Doc. 12).

**I.  BACKGROUND FACTS**

Plaintiff Mattie J. Fischer brings suit against her former employer Defendant Cincinnati Optimum Residential Environment, Inc. alleging violations of her rights under the Family and Medical Leave Act ("FMLA"). Plaintiff claims that Defendant improperly terminated her employment while she was on FMLA leave. Defendant moves for summary judgment arguing that Plaintiff was not entitled to FMLA leave because she failed to provide a medical certification.

**II.  UNDISPUTED FACTS**

Defendant is an Ohio corporation that provides residential services to mentally retarded and disabled individuals. (Doc. 1 at ¶ 2). Plaintiff began her employment with Defendant in 2000 as a Quality Assurance Manager and was promoted to Program

Manager in 2006. (Doc. 12-1 at ¶ 2). Beth Pagano was Plaintiff's supervisor. (Doc. 11 at 21-22). Hettie Catherine Graf was employed by Defendant as the Director of Operations, which entailed handling all Human Resources issues including medical leaves. (Doc. 8-2, Ex. 2 at ¶ 1).

Defendant's FMLA policy provides that employees seeking FMLA leave must first speak with their supervisor and then have a formal meeting with the supervisor and Graf. (Doc. 11 at 10, 18, Ex. 1). Employees are required to use their accrued benefits for payment while on FMLA leave, which includes vacation, personal, and sick days. (*Id.*) Defendant also permits employees to take non-FMLA medical leave by submitting a written request to his or her supervisor, and the supervisor then forwards it to the payroll department. (*Id.* at 7, 29, 33). Medical leave is generally unpaid, unless the employee notifies the payroll department that he or she wishes to use accrued benefits. (*Id.* at 29). An employee continues to accrue benefits while out on medical leave and FMLA leave. (*Id.* at 10, 31). Graf handles all aspects of employee requests for FMLA leave, but has no involvement with employee requests for medical leave. (*Id.* at 10-11, 33).

Plaintiff took FMLA leave from April 4 to May 7, 2013 to recover from surgery to relieve pain in her neck and upper back. (Doc. 10 at 13-14; Doc. 12-1 at ¶¶ 4-5). After returning from FMLA leave, Plaintiff and her husband decided to put their condominium on the market and move to Georgia to live with their daughter. (Doc. 12-1 at ¶ 6). Plaintiff informed Pagano that she intended to give 30-days notice after her condominium sold so that she would have enough time to train her successor. (Doc. 10 at 51; Doc. 12-1 at ¶ 7).

2

On October 9, 2013, Plaintiff met with her podiatrist, Dr. Di Iulio, who recommended surgery to correct a minor deformity in Plaintiff's feet that had begun to cause her pain. (Doc. 12-1 at ¶ 8). Plaintiff decided to have surgery on her left foot and wanted to schedule it before the end of 2013 because she had not received any offers on her condominium and it was more cost-effective through her husband's health insurance. (Doc. 10 at 18-19; Doc. 12-1 at ¶ 9). In late October, Plaintiff informed Pagano that she would need time off to recover from the surgery. (Doc. 10 at 17; Doc. 12-1 at ¶ 10). Plaintiff did not have a surgery date scheduled at that time, but told Pagano it would occur sometime after her previously scheduled vacation from November 18 to November 22, 2013. (Doc. 10 at 16-17; Doc. 12-1 at ¶ 10).

Plaintiff contacted Dr. Di Iulio on November 8, 2013 and scheduled her surgery on her left foot for December 2, 2013. (Doc. 12 at ¶ 11). Also on November 8, 2013, Plaintiff sent a memo to the office staff, including Graf, which stated "I will unfortunately be on medical leave beginning 12/2/2013. I am not sure of my exact return date. Hopefully no later than the 30th of December." (Doc. 10, Ex. E). Plaintiff placed the memo in Graf's interoffice mailbox, but Graf did not receive or read the memo until early December. (Doc. 11 at 24, 26).

Upon return from her vacation, Plaintiff met with Graf on November 25, 2013 to discuss taking leave and obtained the paperwork for FMLA leave. (Doc. 11 at 22-23; Doc. 12-1 at ¶ 13). Among the paperwork Plaintiff received was a certification for her doctor to complete and return to Graf. (Doc. 10 at 12, 47; Doc. 11 at 23-24; Doc. 12-1, Ex. 2). Plaintiff met with Dr. Di Iulio on November 26, 2013, and gave him the

3

certification to complete. (Doc. 12-1 at ¶ 14). During that appointment, Plaintiff decided to have surgery on both feet, which would require additional time to recover. (Doc. 10 at 47-48; Doc. 12-1 at ¶ 14). On December 2, 2013, Dr. Di Iulio performed bilateral foot surgery on Plaintiff and she began her time away from work. (Doc. 10 at 47; Doc. 12-1 at ¶ 16).

Graf did not attempt to contact Plaintiff after their meeting in late November to determine whether Plaintiff intended to take medical leave or FMLA leave. (Doc. 11 at 28-30). Plaintiff received her final paycheck on December 20, 2013 for the pay period of November 25 to December 7, 2013. (Doc. 12-1 at ¶ 18). Plaintiff received three days of regular pay, one day of holiday pay, and the remainder of her accrued vacation, personal, and sick time. (*Id.*, Ex. 3)

On January 4, 2014, Plaintiff received an offer on her condominium, the parties agreed to a purchase price within two days, and set the closing for January 31, 2014. (Doc. 10 at 58, Ex. H). On January 10, 2014, Plaintiff visited Defendant's office with her husband and dog. (*Id.* at 65-66). Plaintiff spoke privately with Pagano and left the office with her personal belongings. (*Id.* at 66-69; Doc. 11 at 37). On February 2, 2014, Plaintiff and her husband vacated their condominium and moved to Georgia. (Doc. 10 at 58).

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex*

4

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

Plaintiff alleges violation of the FMLA under the interference theory and retaliation theory.  Under the interference theory, also known as the entitlement theory, "the issue is simply whether the employer provided its employee the entitlements set forth in the FMLA."  *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).  The FMLA entitles qualifying employees to up to 12 weeks of leave and, as is relevant here, reinstatement to the same or an equivalent position on return from leave.  29 U.S.C. §§ 2612(a), 2614(a).  The retaliation theory, sometimes referred to as the discrimination theory, imposes liability on employers that act against employees because those employees exercised their FMLA rights.  *Edgar*, 443 F.3d at 508.

An employee may prove FMLA interference and retaliation claims under the *McDonnell Douglas* burden-shifting framework.  *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014).  First the employee has the initial

5

burden of establishing a *prima facie* case of an FMLA violation.  *Id.*  Then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  *Id.*  Finally, the employee bears the burden of showing that the employer's proffered reason is pretextual.  *Id.*

Here, Defendant argues that Plaintiff is unable to establish a *prima facie* case under either theory because she failed to provide a certification from her doctor.  Defendant does not articulate a legitimate, non-discriminatory reason for the challenged action, nor does it present an argument that its actions were not pretextual.[1]  Accordingly, Plaintiff only needs to establish a *prima facie* case to defeat Defendant's summary judgment motion.

### A. FMLA Interference

To establish her *prima facie* case of FMLA interference, Plaintiff must prove that: "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied [or interfered with] the employee['s] FMLA benefits to which she was entitled."  *Wallace v. FedEx Corp.*, 764 F.3d 571, 585 (6th Cir. 2014) (alteration in original).  Plaintiff must also show that she was prejudiced or harmed by the violation.  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  An employer's intent is not relevant under the interference theory

---

[1] Plaintiff anticipated that Defendant would argue that Plaintiff resigned her employment.  However, Plaintiff correctly notes that Defendant did not actually advance this argument in its motion and Defendant failed to file a reply brief.  The Court declines to raise this argument on Defendant's behalf.

because the only issue is only whether the employer interfered with the employee's FMLA rights. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012).

Defendant concedes the first two elements of Plaintiff's interference claim, but argues that Plaintiff cannot establish the latter three elements because she failed to provide a medical certification from her doctor. Courts typically analyze failure to provide notice separate from failure to provide a certification, with the latter indicative of whether the employee was entitled to FMLA leave. *See Wallace*, 764 F.3d at 586-87.

### 1. *Notice*

The Department of Labor's FMLA regulations provide that Plaintiff sought foreseeable leave because it was based on planned medical treatment for a serious health condition. 29 C.F.R. § 825.302(a). An employee taking foreseeable leave must generally give "at least 30 days advance notice before FMLA leave is to begin." *Id.* To constitute sufficient notice, the employee must provide "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." *Id.* § 825.302(c). Because Plaintiff previously obtained FMLA leave earlier in the year, she was required to "specifically reference the qualifying reason for leave or the need for FMLA leave." *Id.*

An employee's burden to provide sufficient notice is not heavy. *Wallace*, 764 F.3d at 586. In addition to providing advance notice, an employee taking leave for planned medical treatment "must consult with the employer and make a reasonable effort to

7

schedule the treatment so as not to disrupt unduly the employer's operations." 29 C.F.R. § 825.302(e).[2]

Defendant argues that Plaintiff provided insufficient notice because her November 8, 2013 memo lacked information necessary for Defendant to determine whether her leave qualified as FMLA leave. Specifically, Defendant asserts that Plaintiff's memo did not indicate a definitive return date. However, the regulations provide that Plaintiff only needed to provide notice of the "anticipated timing and during of the leave," not a definitive return date. 29 C.F.R. § 825.302(c). The memo stated that Plaintiff would begin leave on December 2, 2013 and that "I am not sure of my exact return date. Hopefully no later than the 30th of December." (Doc. 10, Ex. E). The relevant question here is whether Plaintiff provided "notice that she needed FMLA leave, not whether she provided notice that she needed a certain amount of FMLA leave." *Wallace*, 764 F.3d at 586.

The evidence viewed in the light most favorable to Plaintiff presents a material factual dispute over whether she provided proper notice. Plaintiff testified that she informed Pagano of her desire to have surgery at least two times in late October and early November, but did not have a surgery date scheduled. (Doc. 10 at 17). Subsequently, Plaintiff wrote in her November 8, 2013 memo that she would take medical leave beginning December 2, 2013. (*Id.*, Ex. E). Finally, Plaintiff met with Graf in late November and specifically raised the possibility of taking FMLA leave, prompting Graf

---

[2] Even after scheduling her surgery for December 2, 2013, Plaintiff took her previously-scheduled vacation from November 18 to November 23, 2013. (Doc. 10, Ex. E).

8

to provide Plaintiff with FMLA paperwork. (Doc. 11 at 22-24; Doc. 12-1 at ¶ 13). Together, this evidence is sufficient to suggest that Plaintiff made Defendant aware that Plaintiff sought FMLA-qualifying leave. *Wallace*, 764 F.3d at 586-87 (noting that the employer providing FMLA paperwork to the employee supports a finding that the employee gave sufficient notice).

Defendant's argument that it did not know whether Plaintiff intended to take medical leave or FMLA leave is not well taken. The FMLA regulations place the burden on the employer to clarify any uncertainty about whether the employee intends to take FMLA leave: "In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c).[3] The record indicates that Defendant may not have satisfied this obligation.

Graf testified that she did not know whether Plaintiff intended to take medical leave or FMLA leave after their meeting in late November 2013; however, Graf made no attempt to clarify this with Plaintiff or other employees. (Doc. 11 at 26-33). Ultimately Graf assumed that Plaintiff had decided to take medical leave rather than FMLA leave based on Plaintiff's November 8, 2013 memo and the fact that Graf allegedly did not receive a certification from Plaintiff's doctor. (*Id.*)

---

[3] *See also* 29 C.F.R. § 825.301(a) ("In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying.").

Whether Defendant satisfied its obligation to inquire further is a disputed fact for several reasons. First, Graf may have acted unreasonably in relying on the contents of Plaintiff's memo. Although the memo is conspicuously dated November 8, 2013 and was placed in Graf's interoffice mailbox that same day, Graf testified that she did not read the memo until early December. (Doc. 11 at 26, 32). Viewed in the light most favorable to Plaintiff, Graf appears to have used Plaintiff's November 8, 2013 memo to answer a question left unresolved at the end of their meeting in late November 2013. (*Id.* at 30).

Second, a jury could determine that Graf should not have based her assumption on the lack of a certification from Plaintiff's doctor. Employees were required to submit FMLA paperwork to Graf, whereas employees taking medical leave communicated with their supervisor and the payroll department and elected whether to use their accrued benefits. (Doc. 11 at 33). Graf therefore assumed that her lack of information meant that Plaintiff had chosen to take medical leave. (*Id.* at 29, 33). However, Graf did not confirm this with Plaintiff's supervisor or the payroll department. (*Id.* at 31-33).

Based on the foregoing, the Court concludes that there is a material dispute about whether Plaintiff provided sufficient notice of her intent to take FMLA leave.

### 2. *Certification*

The parties' dispute primarily centers on compliance with the FMLA's medical certification provision. Defendant asserts that Plaintiff was not entitled to FMLA leave because she failed to timely provide a certification. Plaintiff contends that she had no obligation to provide a certification because Defendant did not make a proper request under the applicable regulations.

The FMLA provides that an employer "may require" an employee to provide a certification from the employee's health care provider to confirm the existence of a serious health condition. 29 U.S.C. § 2613(a). Among other things, the certification must indicate the "probable duration of the condition" and contain a statement that the employee is unable to perform the functions of the position of the employee. *Id.* § 2613(b). The FMLA regulations place specific requirements on an employer that requests certification.

"Failure to timely provide a medical certification for which an employer has properly asked will generally preclude an employee's FMLA-interference claim." *Kinds v. Ohio Bell Tel. Co.*, 724 F.3d 648, 652 (6th Cir. 2013). However, the employee's "additional duty" to provide a certification is "triggered" only if the employer makes a "proper request" under the regulatory provisions. *Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 573 (6th Cir. 2010). Accordingly, "an employee's failure to timely provide a physician certification is a defense to an FMLA interference claim only if the employer properly asked for a certification in the first place and if the employee failed to respond within required time frame." *Barker v. Genesys PHO, LLC*, __ F. Supp. 2d __, No. 13-cv-11828, 2014 WL 3687335, at *8 (E.D. Mich. July 24, 2014).

An employer must comply with several obligations if it elects to require a certification. First, "an employer must give notice of a requirement for certification each time a certification is required." 29 C.F.R. § 825.305(a). The employer typically should request the certification shortly after the employee provides notice: "In most cases, the employer should request that an employee furnish certification at the time the employee

gives notice of the need for leave or within five business days thereafter." *Id.* § 825.305(b).  However, "[t]he employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration." *Id.*  Finally, the employer must "advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." *Id.* § 825.305(d).

An employee typically has 15 days to provide the certification, "unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification."  29 C.F.R. § 825.305(b).  The regulations provide that "[i]t is the employee's responsibility either to furnish a complete and sufficient certification or to furnish the health care provider providing the certification with any necessary authorization from the employee . . . in order for the health care provider to release a complete and sufficient certification to the employer."  *Id.* § 825.305(d).

Upon the employer's receipt of a certification, "[t]he employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient."  29 C.F.R. § 825.305(c).  The employee then has seven days to cure the deficiency.  *Id.*  The regulations do not expressly require the employer to notify the employee if the employer has not received a certification.  Instead, "a certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification."  *Id.*

If the employer makes a proper request and the "employee fails to provide certification in a timely manner as required by § 825.305, then an employer may deny FMLA coverage until the required certification is provided." 29 C.F.R. § 825.313(a).[4] An employer may begin its denial of FMLA protections only after the employee fails to provide the certification within the requisite timeframe, which must be at least 15 days. *Id.* If an employer "terminates the employee before giving her the full fifteen-day period to provide a certification, the employer has violated the FMLA." *Branham,* 619 F.3d at 572. Even if an employee otherwise qualifies for FMLA leave, "failure to provide a medical certification is an independent basis for denying FMLA leave notwithstanding the appropriateness of that leave." *Kinds*, 724 F.3d at 654.

Here, Defendant asserts that Plaintiff failed to provide a certification. Graf testified that she did not receive a certification from Dr. Di Iulio. (Doc. 11 at 28). Although Plaintiff declared that she provided the certification to Dr. Di Iulio and produced a completed certification dated November 26, 2013 (Doc. 12-1 at ¶ 14, Ex. 2), Plaintiff did not produce evidence that Dr. Di Iulio actually submitted or attempted to submit the certification. Even if this fact is undisputed, the Court concludes that other grounds preclude summary judgment.

First, Plaintiff asserts that Defendant did not make a proper request for certification because it failed to provide required notices to Plaintiff. Specifically, the regulations provide that an employer requesting certification "must give notice of a

---

[4] *See also* 29 C.F.R. § 825.306(e) ("[I]t is the employee's responsibility to provide the employer with complete and sufficient certification and failure to do so may result in the denial of FMLA leave.").

13

requirement for certification each time a certification is required" and "must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification."  29 C.F.R. § 825.305(a), (d).[5]  Defendant used forms created by the Department of Labor to satisfy its requirement to provide employees with general notice of their FMLA rights and to request certification.  (Doc. 11, Ex. 2; Doc. 12-1, Ex. 2).[6]  Plaintiff contends that the certification form, which states that "failure to provide a complete and sufficient certification may result in a denial of your FMLA request," does not unequivocally state that submission of the certification is mandatory.  (Doc. 12-1, Ex. 2).  Defendant's FMLA policy provides that "FMLA or extended leave will be granted only after a formal meeting with the employee, his/her supervisor, and the Executive or Assistant Director" and that Defendant "will require" a statement from the employee's physician that the employee is able to return to work.  (Doc. 11, Ex. 1).  However, Defendant's FMLA policy does not state that certification is required.  (*Id.*)

Additionally, Plaintiff argues that Defendant's conduct with respect to the certification for her prior FMLA leave waived strict enforcement of a certification requirement.  Plaintiff took FMLA leave beginning on April 4, 2013 to recover from surgery performed by a different doctor.  (Doc. 12-1 at ¶¶ 4-5).  Plaintiff provided her doctor with the certification at an appointment in March 2013 and asked him to submit it

---

[5] *See also* 29 C.F.R. § 825.300(c)(1) ("Employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. . . .  Such specific notice must include . . . any requirements for the employee to furnish certification of a serious health condition . . . and the consequences of failing to do so.").

[6] These forms are WHD Publication 1420 and Form WH-380-E, respectively.  *See* 29 C.F.R. §§ 825.300(a)(4), 825.306(b).

14

to Graf.  (*Id.*)  When Graf did not receive the certification by April 3, 2013, the day before Plaintiff was scheduled to begin her leave, she independently contacted Plaintiff's doctor to obtain the certification.  (Doc. 12-6 at CORE 263-68).  The doctor subsequently faxed a completed certification on April 15, 2013, which was dated March 18, 2013.  (*Id.* at CORE 255-60).  Despite the delayed receipt of her certification, Plaintiff did not have any problems taking or returning from FMLA leave and Graf did not notify her of the problem.  (Doc. 10 at 14).

Notwithstanding Defendant's use forms produced by the Department of Labor, it is not clear that Defendant provided Plaintiff with the specific notices required by the regulations.  Although Form WH-380-E accurately conveys that the regulations permit an employer to deny FMLA leave if the employee fails to provide certification, the record does not conclusively reflect that Defendant gave notice to Plaintiff that Defendant would actually take this action, *i.e.*, that denial of FMLA leave was the "anticipated consequence."  *Barker*, 2014 WL 3687335, at *9-10 (holding that questions of fact precluded summary judgment as to whether the employer's oral certification request satisfied the notice requirements).  This conclusion is bolstered by evidence suggesting that not only did Graf approve Plaintiff's FMLA leave in April 2013 despite not receiving her certification until several weeks after the 15-day deadline, but that Graf also contacted the doctor herself to obtain the certification.  (Doc. 12-6 at CORE 255-68).

Second, even if Defendant made a proper request for certification, Plaintiff could qualify for exceptions in the certification regulation.  The default rule provides that the employee must provide a certification within 15 days; however, that rule does not apply if

15

"it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification." 29 C.F.R. § 825.305(b). Plaintiff provided Dr. Di Iulio with the certification the day after she received it from Graf. (Doc. 12-1 at ¶ 14). The certification regulation also provides that "[i]t is the employee's responsibility either to furnish a complete and sufficient certification or to furnish the health care provider providing the certification with any necessary authorization from the employee . . . in order for the health care provider to release a complete and sufficient certification to the employer." 29 C.F.R. § 825.305(d). Based on Plaintiff's prompt provision of the certification and all necessary authorization to her doctor, the doctor's apparent failure to submit the certification to Defendant, and Graf's prior conduct, a jury could find that Plaintiff put forth a "diligent, good faith effort[]" and that it was not practicable to return the certification within 15 days.[7]

Finally, Plaintiff contends that the payroll records reflect that Defendant terminated her employment before the end of the 15-day grace period to provide certification. Plaintiff received her final paycheck on December 20, 2013 for the pay period of November 23 to December 7, 2013. (Doc. 12-1, Ex. 3). Defendant's FMLA policy provides that employees on FMLA leave are required to use their accrued benefits, whereas employees on medical leave are presumptively unpaid but have the option of affirmatively electing to use their accrued benefits. (Doc. 11 at 29, Ex. 1). Defendant's

---

[7] Additionally, Graf testified that "generally, I give people three weeks" to return their FMLA forms. (Doc. 11 at 38). Graf approved Plaintiff's prior FMLA leave request despite receiving the certification almost 30 days after the request.

16

policy also provides that employees continue to accrue benefits while on leave, regardless of whether they are on medical or FMLA leave. (Doc. 11 at 31, Ex. 1).

Here, it is undisputed that Plaintiff's final paycheck reflects that she was paid the remainder of her accrued vacation, sick, and personal time for the five weekdays after her leave was scheduled to begin on December 2, 2013. (Doc. 12-1, Ex. 3). Defendant has not produced evidence that Plaintiff submitted a request to use her accrued benefits, which Graf testified was required for an employee on medical leave to receive paid leave. (Doc. 11 at 29). It is also undisputed that Plaintiff did not receive a paycheck for benefits accrued after December 7, 2013. (Doc. 12-1 at ¶ 25). However, Graf testified that if Plaintiff resigned on January 10, 2014, she would have received a final paycheck in late January paying out the benefits accrued after December 7, 2013. (*Id.* at 34-35). The Court concludes that Plaintiff has demonstrated a genuine factual dispute about whether Defendant terminated Plaintiff on December 7, 2013, which is only 12 days after Graf requested a certification on November 25, 2013. *See Branham,* 619 F.3d at 572 (holding that if "the employer terminates the employee before giving her the full fifteen-day period to provide a certification, the employer has violated the FMLA").

Accordingly, the Court concludes that Defendant is not entitled to judgment as a matter of law on Plaintiff's FMLA interference claim.[8]

---

[8] Although Plaintiff testified that she only intended to return to work long enough to train her replacement (Doc. 12-1 at ¶ 7), she has made a cognizable showing of prejudice from Defendant's alleged FMLA violation necessary to maintain this action. *Ragsdale*, 535 U.S. at 89.

17

### B. FMLA Retaliation

To establish her *prima facie* case of FMLA retaliation, Plaintiff must show that: (1) she was engaged in an activity protected by the FMLA; (2) her employer knew that she was exercising her FMLA rights; (3) she suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse employment action. *Seeger*, 681 F.3d at 283. Defendant's sole argument is that Plaintiff's failure to provide a certification precludes her from establishing the first and second elements. Notably, Defendant does not contend that Plaintiff is unable to show that she suffered an adverse employment action.[9]

The Court previously concluded that factual disputes preclude a determination that Plaintiff failed to provide a certification after a proper request from Defendant. Defendant offers no other basis in support of its motion for summary judgment on Plaintiff's FMLA retaliation claim and Plaintiff cites evidence sufficient to establish her *prima facie* case. Plaintiff asserted that on multiple occasions Pagano expressed anger that Plaintiff was taking leave. (Doc. 12-1 at ¶ 14). Additionally, Plaintiff testified that on January 10, 2014 Pagano told her that other employees had taken over her caseload on a permanent basis and that she was not welcome to return to work. (Doc. 10 at 69).

---

[9] As noted above, Defendant did not argue that Plaintiff resigned her position. Even if Defendant had made this argument, it is not supported by undisputed evidence. Plaintiff testified that she did not resign during her meeting with Pagano on January 10, 2014. (Doc. 10 at 66-69). Although Graf testified that Plaintiff did resign, Graf conceded that she had no personal knowledge of what occurred during the meeting between Plaintiff and Pagano. (Doc. 11 at 37-38). Graf subsequently declared in her affidavit that Plaintiff's personnel file reflects that Plaintiff resigned, but this file was not submitted as part of the record. (Doc. 8-2, Ex. 3 at ¶ 9).

Accordingly, Defendant has failed to show that it is entitled to judgment as a matter of law.

## IV.     CONCLUSION

Wherefore, for these reasons, Defendant's Motion for Summary Judgment (Doc. 8) is **DENIED**.

**IT IS SO ORDERED.**

Date:  2/3/15                                        *s/ Timothy S. Black*
                                                                  Timothy S. Black
                                                                  United States District Judge

19